UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ENKHTAIVAN OH CHANG HUN and | ) | |
| MANDKHAI MYAGMARJAV, | ) | Case No. 26-80985 |
| | ) | |
| Defendants. | ) | Judge Thomas M. Lynch |

---

| | | |
|---|---|---|
| ADAM G. BRIEF, | ) | |
| Acting United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 26- |
| v. | ) | |
| | ) | |
| ENKHTAIVAN OH CHANG HUN and | ) | |
| MANDKHAI MYAGMARJAV, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT OBJECTING TO DEFENDANTS' DISCHARGE

The Plaintiff, Adam G. Brief, the Acting United States Trustee for the Northern District of Illinois, Western Division, by his attorney, Tiffany Emrick Rodriguez, alleges the following for his complaint objecting to the discharge of the defendants, Enkhtaivan Oh Chang Hun and Mandkhai Myagmarjav ("Defendants").

## BRIEF SUMMARY

The Defendants failed to make complete and honest disclosures on their bankruptcy documents. They failed to disclose their ownership interest in an LLC held in the four years prior to filing bankruptcy and failed to disclose over $44,000 received from the sale of that business. They have failed to accurately disclose household income and failed to accurately disclose their financial affairs. Repeatedly in their 341 meetings and 2004 examinations the Debtors acknowledged that they knew the information needed to be disclosed but forgot. Despite this, the Defendants did not attempt to correct their schedules for three months – and those amendments remain incomplete.

Post-petition, the Defendants encumbered property of the estate by entering into a lease agreement without the permission of the panel trustee. The Defendants' discharge should be denied pursuant to 11 U.S.C. § 727(a)(2) and (a)(4).

## JURISDICTION AND VENUE

1. This is an objection to the Defendants' discharge in a case arising under Title 11 of the United States Code and, as such, is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J).

2. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) because this proceeding arises in and is related to the Defendant's bankruptcy case, which is pending in this Court.

4. The United States Trustee consents to the entry of final judgments and orders by the Bankruptcy Court.

## THE PARTIES

5. The Plaintiff, Adam G. Brief, is the Acting United States Trustee for the Northern District of Illinois, Western Division.

6. The Plaintiff is authorized to bring this action pursuant to 28 U.S.C. § 586(a)(5) and 11 U.S.C. §§ 307 and 727(c)(1).

7. The Defendants, Enkhtaivan Oh Chang Hun and Mandkhai Myagmarjav (together "Defendants" or separately "Enkhtaivan" and "Mandkhai"), are the debtors in case number 26-80985, a Chapter 7 case that is pending in this Court.

## FACTS

8. The Defendants filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, along with their schedules and statements, on June 12, 2026, ("Petition Date")

with the assistance of their attorney, Kyom Bae ("Attorney Bae"). Brian Hart was appointed as the Chapter 7 trustee ("Trustee Hart"). *Dkt* 1 of case 26-80985[1].

**Defendants' Original Bankruptcy Schedules**

9. The Defendants filed their petition and schedules on June 12, 2026. *Dkt.* 1.

10. The Defendants disclosed ownership interests in three properties on their schedules – their homestead and two rental properties.

11. On schedule A/B, the Defendants reported owning no jewelry, household goods worth only $500, a checking account with a $1,741.58 balance at Chase, a checking account with a $448.75 balance at Bank of America, and no interests in any businesses. ("Misrepresentation #1).

12. On schedule I, Oh Chang Hun disclosed monthly income of $13,850 from the operation of a business, Peace Taivnaa, and Mandkhai disclosed that she was not employed and earned no income. ("Misrepresentation #2).

13. On their statement of financial affairs, the Defendants did not disclose any financial accounts or instruments held in their name which were closed, sold, moved, or transferred within the past year, nor did they disclose controlling any accounts in the name of other parties. ("Misrepresentation #3).

14. On their statement of financial affairs, the Defendants did not disclose any repayments to insiders in the year prior to the Petition Date, and only disclosed payments to secured creditors in response to question 6 regarding payments to creditors exceeding $600 in the 90 days before the Petition Date.

15. On their statement of financial affairs, the Defendants disclosed previous ownership interests in two trucking businesses – E&E Trans Inc. and E&E Auto Trans Inc. – that operated until May 2026.

[1] Unless otherwise indicated, references to the docket refer to case 26-80985.

**Defendants' First Amendment to the Bankruptcy Schedules**

16. The Defendants filed an amended summary of assets and liabilities and an Amended schedules I and J on June 16, 2026 ("Amendment One"). *Dkt* 10 and 11.

17. On the amended schedule I, Oh Chang Hun's monthly income was lowered from $13,850.00 to $10,417.99 and there were no changes to Mandkhai's income.

18. On the amended Schedule J, various household expenses were changed.

19. No other changes were made to the bankruptcy schedules at this time.

**Section 341 Meetings of Creditors**

20. Trustee Hart held the initial section 341 meeting of creditors on July 14, 2026 ("341 Meeting"), and a continued section 341 meeting of creditors on August 3, 2026 ("Continued 341 Meeting").

21. The Defendants appeared and provided testimony under oath at both meetings with the assistance of a Mongolian interpreter.

22. The Defendants, through counsel, confirmed that their primary and native language is Mongolian and they communicated with their counsel through Google translate or in Korean (which Mandkhai speaks).

23. At the first meeting, when asked if the Defendants read and signed the bankruptcy petition and schedules, the Defendants testified "yes."

24. When asked if the Defendants understood the bankruptcy petition and schedules, the Defendants testified "yes."

25. When asked if Defendants listed all their assets and debts on their bankruptcy documents, the Defendants testified "yes." ("Misrepresentation #4).

26. When asked if the Defendants listed all their income and expenses on their bankruptcy documents, the Defendants testified "yes." ("Misrepresentation #5")

27. When asked if the Defendants need to make changes or corrections to their bankruptcy documents, the Defendants testified "no." ("Misrepresentation #6")

28. When asked if the Defendants had transferred any asset to a family member within the last two years, the Defendants testified "no." ("Misrepresentation #7")

29. When asked if the Defendants repaid a family member more than $5,000 within the last year, the Defendants testified "no." ("Misrepresentation #8").

30. When asked if there is a tenant in one of the rental properties identified as the Essington Property, the Defendants testified there was no longer a tenant as of March 2026, and they are looking for another tenant.

31. Trustee Hart told the Defendants at the 341 Meeting that they were not allowed to permit any liens on, encumber, or sell the three properties, including the Essington Property.

32. When asked if the Defendants will abide by the prohibition on liens and sale, the Defendants testified "yes." ("Misrepresentation #9")

33. When asked if the Defendants own any jewelry, the Defendants testified "no." ("Misrepresentation #10")

34. When asked if the Defendants own any wedding bands, the Defendants testified "yes."

35. Trustee Hart noted for the record at the 341 Meeting that Mandkhai was wearing earrings, and in response Mandkhai admitted she was wearing jewelry.

36. In response to why they did not disclose jewelry on their schedules, the Defendants explained they did not think it had value.

**Defendants' Second Amendment to the Bankruptcy Schedules**

37. Following the 341 Meeting, the Defendants filed amended schedule A/B, C, and G on July 27, 2026 ("Amendment Two"). *Dkt.* 19.

38. On their amended schedule A/B, the Defendants itemized their household goods as

a sofa, bed, and table and itemized electronics as a Samsung TV, laptop, headphones, and iPhone.

39. On their amended schedule A/B, the Defendants disclosed jewelry consisting of including earrings, rings, and necklaces, worth $0.

40. On their amended schedule A/B, the Defendants disclosed a 100% ownership interest in a business – Peace Taivnaa Inc. worth $0.

**Continued 341 Meeting**

41. Following Amendment Two, on August 3, the Defendants attended the Continued 341 Meeting and testified under oath with the assistance of a Mongolian interpreter.

42. When asked if the Defendants listed all their assets and debts on the Amendment Two schedules, the Defendants testified "yes." ("Misrepresentation #11")

43. When asked if any individual is living in the Essington Property, the Defendants testified "yes" and further testified that there were new tenants in the property as of August 2026.

44. When asked if the Defendants have an interest in Hobart 333 LLC, the Defendants testified that they currently do not have any interest in the company and stated their ownership interest was sold.

45. When asked when the ownership interest was sold, the Defendants answered "September 2025."

46. When asked if the Defendants received any money or payments for their share in Hobart 333 LLC, the Defendants testified "no." ("Misrepresentation #12")

47. When asked if the Defendants are entitled to any payments for their share, the Defendants testified that they are out of the business and are not entitled to payment.

48. When asked why the Defendants did not disclose prior ownership interest in Hobart 333 LLC in their bankruptcy schedules, the Defendants answered that they haven't been involved in the business for one year and offered no other explanation.

49. When asked if the Defendants earned any income from Hobart 333 LLC, the

Defendants testified that they did not receive profits from the business, and Mandkhai worked about three times a week in the kitchen.

50. When asked if the Defendants have a Robinhood account, Mandkhai confirmed that she has a Robinhood account.

51. When asked why the Robinhood account was not listed in bankruptcy documents, the Defendants testified that they did not use the account but offered no further explanation for their failure to disclose.

52. When asked to identify the source of a $71,000 deposit into Enkhtaivan's Chase checking account on September 9, 2025, the Defendants testified the money was from the sale of their interest in Hobart 333.

53. They further explained that the $71,000 included both their portion of the sale proceeds, as well as and a portion owed and then transferred to another owner.

54. When asked whether loans from friends were disclosed in the bankruptcy schedules, the Defendants answered "no."

55. When asked to explain why loans from friends were not disclosed in the bankruptcy schedules, the Defendants testified they did not know this information needed to be included because the loans had been paid back.

56. The Defendants received loans from various friends in the year prior to filing and repaid one of those friends in the 90 days prior to filing their bankruptcy petition.

57. When asked if the Defendants have any other assets or debts they have not disclosed on their bankruptcy schedules, the Defendants testified "no."

58. When asked why the Defendants did not list the repayments on their bankruptcy petition or disclose them at the 341 Meeting, the Defendants testified they didn't include them because they had been repaying the loans to these individuals.

59. When asked how much of the money was repaid to family and friends in the past

year, the Defendants answered that they repaid approximately $15,000.

**Defendants' Third Amendment to the Bankruptcy Schedules**

60. On September 9, after the Continued 341 Meeting, the Defendants filed amended schedules A/B, E/F, and statement of financial affairs ("Amendment Three"). *Dkt. 37 and 38*.

61. On this third amended schedule A/B, the Defendants disclosed their interest in the Robinhood account for the first time.

62. On this amended statement of financial affairs, Mandkhai's 2025 gross income changed from $0 to $8,635.00, now including commission from IM Beauty School.

63. On their amended statement of financial affairs, the Defendants, for the first time, disclosed the following payments to insiders within a year of the Petition Date: 1) OD Transportation LLC received $1,840.99 on May 5, 2026; 2) Zolzaya Molomjamts ("Molomjamts") received $3,500 on August 19, 2025; 3) Nansalmaa Munkh received $2,400 between July 21, 2025, to August 18, 2025; 4) Molomjamts received $1,200 on May 18, 2026; 5) Molomjamts received $16,270 between October 27, 2025, to December 8, 2025; and 6) Guun Bros Inc. received $2,000 between April 7 and 22, 2026.

64. On their amended statement of financial affairs, the Defendants, for the first time, disclosed their previous ownership interest in Hobart 333 LLC and disclosed they had an interest in that business from November 13, 2023, to September 4, 2025.

**Hobart 333 LLC**

65. On their original statement of financial affairs and schedules, the Defendants failed to disclose their 1/3 ownership interest in Hobart 333 LLC.

66. At the 341 Meeting, the Defendants disclosed that they previously held a 1/3 ownership interest in Hobart 333 LLC.

67. The Defendants stated at the 341 Meeting that they did not disclose an ownership interest because it had been one year since they were involved in Hobart 333 LLC, but admitted they

knew they were supposed to disclose business interests previously held. They did not explain why they disclosed the prior trucking businesses but not Hobart 333.

68. In September 2025, the Defendants received over $44,000 from the sale of Hobart 333 LLC, deposited those funds into their account, and spent the entirety of the proceeds within one month by paying: $10,000 to an immigration lawyer, $9,515.00 to a credit card, $5,100.00 to E&E Trans for truck repairs, $4,720.00 a truck payment, and $16,200 to Molomjamts for loan repayments.

69. On their 2025 federal tax return, the Defendants reported neither the sale of this business, nor the receipt of the sale proceeds.

70. The Defendants failed to disclose the sale of that business interest and their receipt of over $44,000 from the sale on their original filings, the Amendment One, and Amendment Two. ("Misrepresentation #13)

**Depository Accounts**

71. The Defendants were the sole authorized signers for the following accounts on the Petition Date:

a. Chase account ending in 5089 in the name of E&E Auto Trans Inc. ("Chase 5089");
b. Bank of America account ending in 0566 in the name of E& Trans Inc. ("BOA 0566");
c. Bank of America account ending in 2891 in the name of Mandkhai ("BOA 2891");
d. Chase account ending in 0618 in the name of Enkhtaivan ("Chase 0618"); and
e. PNC Bank account ending in 4835 in the name of Peace Taivnaa Inc. ("PNC 4835")

72. E&E Auto Trans Inc. was no longer operating as of the Petition Date.

73. The Defendants did not disclose on their original or amended filings that they had access to, and control of, the Chase 5089 account, BOA 0566 account, or the PNC 4835 account.

74. In fact, when the Defendants finally disclosed their interest in Peace Taivnaa LLC on schedule A/B, they did not disclose that it had a bank account and disclosed the business was worth $0.(“Misrepresentation #14)

75. The PNC 4835 statements show that as of the Petition Date the balance in that account was $2,841.31.

**Rule 2004 Examination**

76. On September 4, 2026, the Court entered an order approving the United States Trustee’s Motion for Rule 2004 Examination and Production of Documents on the Defendants (“R2004 Order”). The R2004 Order indicated that the Defendants were to appear for examination under oath on September 21, 2026 (“R2004 Exam”).

77. The Defendants appeared at the R2004 Exam on September 21, 2026, with Attorney Bae and provided testimony under oath with the assistance of a Mongolian interpreter.

78. In the R2004 Exam, Mandkhai testified that although the bankruptcy schedules and documents were prepared in English, her attorney explained the documents to her in Korean and that she understood them.

79. When asked if she had the opportunity to meet with her attorney to review the schedules and documents for accuracy prior to filing for bankruptcy, Mandkhai testified “yes.”

80. When asked if she was aware that in the original bankruptcy documents her and her spouse had to disclose all business interests from the past four years, Mandkhai testified “yes.”

81. When asked if she was aware that Hobart 333 LLC was not listed on the schedules, Mandkhai testified “yes.”

82. When asked to explain why Hobart 333 LLC was not included, Mandkhai testified that because it was not her main business and the interest was sold, she forgot to include it.

83. When asked why the interest in Hobart 333 LLC was not disclosed, Mandkhai testified that she and her spouse were not involved too much in the business, so they forgot to disclose it in their filings.

84. When asked how much her and her spouse received from the sale of Hobart 333 LLC, Mandkhai testified "$44,000."

85. When asked who Molomjamts is and why this individual received $16,200 within a year of filing for bankruptcy, Mandkhai testified that she is a sister/friend to whom Mandkhai repaid money.

86. Mandkhai testified that the owner of OD Transportation is a friend and she borrowed money from them prior to filing this case.

87. When asked if she knew payments to insiders needed to be disclosed in her bankruptcy filings, Mandkhai testified "yes."

88. When asked why jewelry was not disclosed and itemized within the schedules, Mandkhai states she forgot to list it.

89. When asked if she understood she was supposed to disclose her Robinhood account, Mandkhai testified "yes."

90. At the R2004 Exam, Mandkhai testified that she withdrew $2,631 from her Robinhood account and deposited those funds in her BOA 2891 account in February 2026.

91. Enkhtaivan testified that he understood that an interest in an LLC is an ownership interest in a business.

92. When asked if he recalls having an opportunity to review the bankruptcy documents prior to filing, Enkhtaivan testified "yes."

93. When asked if he understood that signing the bankruptcy documents is subject to perjury, Enkhtaivan testified "yes."

94. When asked why the Hobart 333 LLC sale proceeds were not disclosed in the

bankruptcy filings, Enkhtaivan stated that he forgot to include them.

95. When asked if he understood he needed to disclose businesses that were no longer operating, Enkhtaivan testified "yes."

96. When asked if he reviewed financial records to help prepare bankruptcy schedules, Enkhtaivan testified "yes."

97. Enkhtaivan admitted that the Chase 5089 account in the name of E&E Auto Trans Inc. was still open, and he was the sole authorized signer on that account.

98. Enkthaivan also affirmed that at all times either he or his spouse were the sole authorized signers for the PNC 4835 and BOA 0566 accounts.

**Essington Property**

99. The Defendants own three parcels of real estate – their homestead and two rental properties.

100. After the 341 Meeting, the Defendants entered into a new lease with a tenant for the Essington Property and the lease was effective August 1, 2026.

101. At the time they entered into this lease, Trustee Hart had filed a notice of probable assets and had not abandoned any property of the estate.

102. At no time did the Defendants obtain Court approval to enter into the lease.

103. Trustee Hart did not authorize the lease, and the Defendants did not have authority to enter into this post-petition lease for the Essington Property.

104. In the R2004 Exam, the Defendants testified that they reached an agreement with Trustee Hart to buy back the estate's interest in the Essington Property for $55,000. *Dkt.* 45.

**COUNT I**

**11 U.S.C. § 727(a)(2)(B) – Transferring Property of the Estate with Intent to Hinder, Delay, or Defraud Creditors After Filing the Bankruptcy Petition**

105. The Plaintiff incorporates the allegations set forth in the preceding paragraphs as

though fully set forth in this Court.

106. Section 727(a)(2)(B) of Bankruptcy Code provides that the Court shall deny a Defendant's discharge if the debtor "with intent to hinder, delay, or defraud…an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed… property of the estate after the date of the filing of the petition."

107. To deny the Defendant's discharge, the Court must prove that (1) the Defendants transferred, destroyed, or concealed property or attempted to do so, (2) property belonging to the estate, (3) after filing the bankruptcy petition, and (4) with intent to hinder, delay, or defraud a an officer of the estate.

108. The Defendants transferred a legal property interest of the estate by entering into a new lease agreement for Essington Property on August 1, 2026.

109. The Essington Property was property of the estate under Section 541 of the Bankruptcy Code.

110. The Defendants entered into the lease on August 1, 2026, approximately two months after filing their bankruptcy petition on June 12, 2026.

111. The Defendants had the intent to hinder, delay, or defraud an officer of the estate because they explicitly were instructed by Trustee Hart not to encumber their properties in any way.

112. By encumbering the Essington Property, the Defendants attempted to prevent Trustee Hart from administering the Essington Property and the Defendants retained control over property of the estate without permission of the trustee.

WHEREFORE, Plaintiff, the United States Trustee, respectfully requests that this Court enter an order denying the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2)(B) and granting any additional appropriate relief.

## COUNT II

### 11 U.S.C. § 727(a)(4)(A) – Knowingly and Fraudulently Making a False Oath Statements Under Oath at 341 Meeting

113. The Plaintiff incorporates the allegations set forth in the preceding paragraphs as though fully set forth in this Count.

114. Section 727(a)(4)(A) of the Bankruptcy Code provides that the Court shall deny a Defendant's discharge if, among other things, a Defendant "knowingly and fraudulently, in or in connection with the case … (A) made a false oath or account."

115. For the Court to deny discharge under Section 727(a)(4)(A), a plaintiff must prove by a preponderance of evidence that (1) the debtor made a statement under oath (2) the statement was false (3) the debtor knew the statement was false (4) the debtor made the statement with fraudulent intent and (5) the statements related materially to the bankruptcy case.

116. At the 341 Meeting and Continued 341 Meeting, the Defendants testified under oath.

117. Misrepresentation #4 was false.

118. Misrepresentation #5 was false.

119. Misrepresentation #6 was false.

120. Misrepresentation #7 was false.

121. Misrepresentation #8 was false.

122. Misrepresentation #9 was false.

123. Misrepresentation #10 was false.

124. Misrepresentation #11 was false.

125. Misrepresentation #12 was false.

126. The Defendants knew or should have known that Misrepresentation #4 was false at the time they made the statement.

127. The Defendants knew or should have known that Misrepresentation #5 was false at

the time they made the statement.

128. The Defendants knew or should have known that Misrepresentation #6 was false at the time they made the statement.

129. The Defendants knew or should have known that Misrepresentation #7 was false at the time they made the statement.

130. The Defendants knew or should have known that Misrepresentation #8 was false at the time they made the statement.

131. The Defendants knew or should have known that Misrepresentation #9 was false at the time they made the statement.

132. The Defendants knew or should have known that Misrepresentation #10 was false at the time they made the statement.

133. The Defendants knew or should have known that Misrepresentation #11 was false at the time they made the statement.

134. The Defendants knew or should have known that Misrepresentation #12 was false at the time they made the statement.

135. Misrepresentation 4 bore a relationship to the Defendants' business transactions or bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

136. Misrepresentation #5 bore a relationship to the Defendants' business transactions or bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

137. Misrepresentation #6 bore a relationship to the Defendants' business transactions or bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

138. Misrepresentation #7 bore a relationship to the Defendants' business transactions or

bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

139. Misrepresentation #8 bore a relationship to the Defendants' business transactions or bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

140. Misrepresentation #9 bore a relationship to the Defendants' business transactions or bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

141. Misrepresentation #10 bore a relationship to the Defendants' business transactions or bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

142. Misrepresentation #11 bore a relationship to the Defendants' business transactions or bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

143. Misrepresentation #12 bore a relationship to the Defendants' business transactions or bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

WHEREFORE, Plaintiff, the United States Trustee, respectfully requests that this Court enter an order denying the Defendants' discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and granting any additional appropriate relief.

## COUNT III

### 11 U.S.C. § 727(a)(4)(A) – Knowingly and Fraudulently Making a False Oath Statements on Bankruptcy Documents

144. The Plaintiff incorporates the allegations set forth in the preceding paragraphs as though fully set forth in this Count.

145. Section 727(a)(4)(A) of the Bankruptcy Code provides that the Court shall deny a Defendant's discharge if, among other things, a Defendant "knowingly and fraudulently, in or in connection with the case … (A) made a false oath or account."

146. A false statement or omission in the Defendants' bankruptcy schedules or financial affairs can constitute a false oath.

147. To establish fraudulent intent, the debtor can either have intentional misrepresentations or intentional disregard for the truth.

148. The Defendants made statements under oath by signing their bankruptcy petition, schedules, and statements of financial affairs. Each subsequent amendment required the same signature affirming the accuracy of the statements.

149. Misrepresentation #1 was false.

150. Misrepresentation #2 was false.

151. Misrepresentation #3 was false.

152. Misrepresentation #13 was false.

153. Misrepresentation #14 was false.

154. The Defendants knew or should have known that Misrepresentation #1 was false at the time they made the statement.

155. The Defendants knew or should have known that Misrepresentation #2 was false at the time they made the statement.

156. The Defendants knew or should have known that Misrepresentation #3 was false at the time they made the statement.

157. The Defendants knew or should have known that Misrepresentation #13 was false at the time they made the statement.

158. The Defendants knew or should have known that Misrepresentation #14 was false at the time they made the statement.

159. Misrepresentation #1 bore a relationship to the Defendants' business transactions or bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

160. Misrepresentation #2 bore a relationship to the Defendants' business transactions or bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

161. Misrepresentation #3 bore a relationship to the Defendants' business transactions or bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

162. Misrepresentation #13 bore a relationship to the Defendants' business transactions or bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

163. Misrepresentation #14 bore a relationship to the Defendants' business transactions or bankruptcy estate, or concerned the discovery of assets, business dealings, or the existence or disposition of the Defendants' property.

164. The Defendants' schedule I, both original and amended, fails to disclose commission income for Mandkhai from IM Beauty School.

165. The Defendants' SOFA, both the original and as amended, fails to disclose the transfer of $2,316 from the Robinhood account in February 2026.

166. The Defendants' SOFA, both the original and amended, fail to disclose the open depository accounts in the name of E&E that are still controlled by the Defendants.

167. To date, the amendments still fail to accurately disclose the financial affairs of the Defendants and continue to demonstrate their intentional disregard for the truth.

WHEREFORE, Plaintiff, the United States Trustee, respectfully requests that this Court enter an order denying the Defendants' discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and granting

any additional appropriate relief.

Dated: October 26, 2026

Respectfully submitted,

ADAM G. BRIEF
Acting United States Trustee

By: *__/s/ Tiffany Emrick Rodriguez__*
TIFFANY EMRICK RODRIGUEZ
Trial Attorney

Office of the United States Trustee
780 Regent Street
Suite 304
Madison, Wisconsin 53715
(608) 264-5522
Tiffany.Rodriguez@usdoj.gov